IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| COURTNEY E.F., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Case No. CIV-24-1173-STE |
| ) | |
| FRANK BISIGNANO, ) | |
| Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I.     PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 17-30). The Appeals Council denied

Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 405.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 27, 2019, her alleged onset date. (TR. 20). At step two, the ALJ determined Plaintiff suffered from severe disorders involving: schizophrenia, mood disorder, somatic symptom disorder (pseudoseizures/tics and headaches), and obesity (TR. 20). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 20).

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: no climbing ladders, ropes, or scaffolds; must avoid workplace hazards such as moving machinery, unprotected heights and open flames; limited to initiating and carrying out to completion simple, routine tasks with production goals set on a daily basis as opposed to hourly; occasional interaction with the public, coworkers, and supervisors; occasional changes in the work setting.

(TR. 22).

Because Plaintiff had no past relevant work,[1] the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national

---
[1] (TR. 29).

economy that Plaintiff could perform. (TR. 80-81). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles that Plaintiff could perform. (TR. 81). The ALJ then adopted the VE's testimony and concluded, at step five, that Plaintiff was not disabled based on her ability to perform the identified jobs. (TR. 30).

### III.   ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred: (1) in her evaluation of prior administrative findings; (2) in her duty to develop the record; and (3) at step five. (ECF No. 12:4-15).

### IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

**V.      ERROR IN THE ALJ'S EVALUATION OF A MEDICAL OPINION**

Plaintiff alleges error in the ALJ's evaluation of prior administrative medical findings.[2] (ECF No. 12:4-8). The Court agrees.

**A.      The ALJ's Duty to Prior Administrative Medical Findings**

The Social Security Administration has defined categories of evidence, including, as pertinent here, "prior administrative medical findings." The regulations define this category of evidence as findings, other than the ultimate determination about whether an individual is disabled, about a medical issue made by Federal and State agency medical and psychological consultants at a prior level of review, based on a review of the evidence in the claimant's case record, including, but not limited to, an individual's RFC. *See* 20 C.F.R. §§ 404.1513(a)(5) 416.913(a)(5).

Under the regulations, when evaluating prior administrative medical findings, the Commissioner the ALJ must articulate how persuasive she finds the evidence. 20 C.F.R. §§ 404.1520c(b) & 416.920c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how she considered those factors. 20 C.F.R. §§ 404.1520c(b)(2), (c)(1)-(2) & 416.920c(b)(2), (c)(1)-(2). "Supportability" refers to the ALJ examining the medical source's own medical evidence and supporting explanations to determine whether the source's opinion (based on the evidence) are persuasive. 20 C.F.R. § 404.1520c(c)(1). "Consistency" involves comparing the medical source's opinion with other medical evidence and prior administrative finding

---

[2] Prior administrative medical findings are findings, other than the ultimate determination about whether an individual is disabled, about a medical issue made by Federal and State agency medical and psychological consultants at a prior level of review, based on a review of the evidence in the claimant's case record, including, but not limited to, an individual's RFC. 20 C.F.R. §§ 404.1513(a)(5) & 416.913(a)(5).

to see whether the opinions and evidence are consistent. 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1).

In addition, the ALJ may, but is not required to, discuss other considerations that may bear on the persuasiveness of a medical opinion, such as the relationship of the source to the claimant, the source's area of specialization, and other factors such as the source's familiarity with the disability program's policies and evidentiary requirements. *See* 20 C.F.R. §§ 404.1520c(c)(3)-(5) & 416.920c(c)(3)-(5). The ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

### B. Prior Administrative Medical Findings and the ALJ's Related Evaluation

At the reconsideration level of the disability determination, State agency psychologist Dr. Ryan Scott evaluated Plaintiff's mental residual functional capacity (MRFC) and rendered "prior administrative medical findings." (TR. 107-109, 112-113). Dr. Scott's assessment was comprised of: (1) an evaluation of Plaintiff's medically determinable impairments and severity, utilizing the technique as set forth in 20 C.F.R. §§ 404.1520a & 416.920a, otherwise known as "PRT findings" which are used at steps two and three of the disability assessment and (2) Plaintiff's MRFC which is used at step four of the disability determination. The MRFC, in turn, is comprised of two sections. In the first section, the author is instructed to answer a series of questions to "help determine the individual's ability to perform sustained work activities" in four specific domains. (TR. 112). "However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports

each conclusion." (TR. 112). Thus, while the questions in the first section are designed to aid a doctor's assessment, it is the narrative discussion that represents the Plaintiff's MRFC. *See Smith v. Colvin*, 821 F.3d 1264, 1268 n.1 (10th Cir. 2016).

As part of the PRT findings, Dr. Scott assessed Plaintiff's medically determinable impairments and found that she had "moderate" limitations in her ability to understand, remember, or apply information. (TR. 107). In assessing Plaintiff's specific abilities in this area, Dr. Scott concluded that Plaintiff was "markedly limited" in her ability to understand and remember detailed instructions. (TR. 112). Ultimately, in the "narrative" portion of the MRFC, Dr. Scott found that Plaintiff could understand, recall, and perform simple repetitive tasks. (TR. 113).

The ALJ acknowledged these findings from Dr. Scott and stated:

> As to the opinion of Dr. Scott, the undersigned finds the limitations in understanding and memory are not substantiated by the record and instead, the limitation to simple tasks seems more warranted based on the claimant's stress level and anxiety rather than her ability to understand and remember; therefore this limitation is not well supported by the record as presented by Dr. Scott. . . . Overall, the mental limitations set forth [by Dr. Scott] are mostly inadequately explained and therefore not persuasive.

(TR. 28).

### C. Error in the ALJ's Evaluation of Dr. Scott's Opinion

Plaintiff argues that the ALJ erred in evaluating the persuasiveness of Dr. Scott's opinion because she failed to address the "consistency" factor in her analysis. (ECF No. 12:4-8). The Court agrees.

Here, the ALJ ultimately found that "the mental limitations set forth [by Dr. Scott] are mostly inadequately explained and therefore not persuasive." (TR. 28). However, the ALJ ultimately adopted Dr. Scott's opinion that Plaintiff could "understand, recall, and

perform simple repetitive tasks." *Compare* TR. 113 (Dr. Scott's opinion stating the same) with TR. 22 (RFC finding that Plaintiff was "limited to initiating and carrying out to completion simple, routine tasks."). Thus, despite concluding that Dr. Scott's "mental limitations" were "not persuasive," the RFC reveals that the ALJ ultimately agreed with Dr. Scott regarding Plaintiff's ability to perform simple tasks.

It is true that an ALJ is not required to adopt every limitation in a medical opinion that he finds persuasive. *See Mitchell v. Kijakazi*, No. CIV-21-1087-P, 2022 WL 2764904, at *3 (W.D. Okla. July 15, 2022) ("[A]ccording a medical opinion [persuasive value] does not mean the ALJ must adopt every single aspect of the opinion." (citation omitted)). However, the ALJ must explain the basis for rejecting certain limitations in an opinion he finds persuasive, or the decision must sufficiently include the reasoning for doing so. *See Bradford v. Berryhill*, No. CIV-18-1008-HE, 2019 WL 2388864, at *1-2 (W.D. Okla. June 6, 2019) ("[T]he ALJ was not bound to adopt every limitation included in the medical opinions to which she gave great weight"; affirming because the ALJ sufficiently explained why she adopted a limitation different from those in the subject medical opinions); *cf., Benavidez v. Colvin*, 650 F. App'x 619, 621 (10th Cir. 2016) ("[A]n ALJ cannot, without explanation, adopt some restrictions assessed by a physician and reject others that the physician also assessed.").

Here, even though the ALJ appeared to adopt Dr. Scott's opinion that Plaintiff could perform "simple tasks," the ALJ failed to explain why she rejected Dr. Scott's opinion that Plaintiff was "markedly limited" in her ability to carry out detailed instructions. Arguably, the ALJ evaluated the opinion's "supportability" by finding that the limitations in understanding and memory were "not substantiated by the record" and "not well

supported by the record." (TR. 28). But the ALJ failed to examine the opinion's consistency with other evidence in the record. The error is critical because Dr. Scott's opinion is consistent with reports from Plaintiff's mother (with whom she lives) that Plaintiff cannot prepare meals because "some recipes are fairly detailed" and their relationship has improved since mother has "started breaking down tasks into smaller instructions." (TR. 290, 531).

      The Commissioner argues that the ALJ discharged her duty to evaluate the consistency of Dr. Scott's opinion, by pointing to the fact that the ALJ compared Dr. Scott's finding that Plaintiff could have only superficial contact with the public with the fact that Plaintiff interacted with people in her current, part-time job. But this argument ignores Dr. Scott's opinion that Plaintiff was markedly limited in her ability to understand and remember detailed instructions. The Commissioner also points to the fact that the ALJ "detailed Plaintiff's longitudinal treatment" and then later compared Dr. Scott's findings "to the record," stating that "it is clear the ALJ was referencing findings she already delineated." (ECF No. 17:6). The Court disagrees. A seven page iteration of Plaintiff's medical history is not "sufficiently specific" enough to allow proper appellate review by this Court, and as the Tenth Circuit Court of Appeals has stated, "reading a record should not be like a game of Where's Waldo[.]" *Aquila, Inc. v. C.W. Mining*, 545 F.3d 1258, 1268 (10th Cir. 2008); *see Gross v. Town of Cicero*, 619 F.3d 697, 702 (7th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in [the record]." (alteration in original). Finally, Mr. Bisignano points to the fact that in the "narrative" section of Dr. Scott's opinion, he found that Plaintiff was limited to "simple, repetitive tasks," which is reflected in the RFC which allowed for Plaintiff to be limited to performing

"simple routine tasks." (ECF No. 17:8). Defendant then correctly cites case law which states that "adjudicators are to use the Section III narrative as the RFC assessment," and argues that Plaintiff improperly "attempts to establish a contradiction between Dr. Scott's MRFC1 ratings and the RFC." (ECF No. 17:8). But Plaintiff has not argued that the limitation in understanding and remembering detailed instructions should have been included in the RFC, only that the ALJ erred in her legal analysis of the same. Thus, the Court rejects the Commissioner's arguments and concludes that the ALJ committed legal error in her failure to assess the consistency of Dr. Scott's opinions as required by the regulations.

## VI.    NO ERROR IN THE ALJ'S DUTY TO DEVELOP THE RECORD

On March 22, 2023, Plaintiff attended a consultative examination with Ray Edwards, LPC. (TR. 1107-1109). In the decision, the ALJ made the following statement with regards to Mr. Edwards' report:

> It should be noted that LPC Ray Edwards is not an acceptable medical source, and also does not include a "medical" opinion other than his observation that he doubts her ability to manage her benefits. The undersigned considered LPC Edward's opinion regarding the claimant's ability to manage her benefits in reaching the decision herein.

(TR. 29). Citing 20 C.F.R. §§ 404.1519p & 416.916p, Plaintiff argues that the ALJ erred in her duty to develop the record regarding Mr. Edwards' report. Specifically, Plaintiff cites subsection (b) of the regulation which states: "If the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." According to Plaintiff, the report was incomplete because it did not contain information related to Plaintiff's "ability to perform basic work

activities"—i.e.—a "medical opinion." *See* ECF No. 12:9; *see also* 20 C.F.R. § 416.1513(a)(2) (definition of a "medical opinion."). But the regulations specifically state: "Although we will ordinarily request a medical opinion as part of the consultative examination process, the absence of a medical opinion in a consultative examination report will not make the report incomplete." 20 C.F.R. §§ 404.1519n & 416.919n. Accordingly, the Court rejects Plaintiff's argument.

## VII. PLAINTIFF'S REMAIMNING ALLEGATION OF ERROR

Plaintiff also argues error at step five, alleging that a conflict exists between the RFC and Plaintiff's ability to perform the jobs identified by the VE. (ECF No. 12:10-15). But the Court declines consideration of this alleged error because the RFC may be affected on remand following a re-evaluation of Dr. Scott's opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on July 18, 2025.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE